IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:06-01110-REB-MEH

BRECKENRIDGE BREWERY OF COLORADO, LLC,
a Colorado limited liability company; and
BBD ACQUISITION CO., a Colorado corporation,
On behalf of themselves and all other similarly situated
direct purchasers of natural gas in the State of Colorado,

        Plaintiffs,

v.

ONEOK INC., et al.,

        Defendants.

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................... 1

I.     FACTUAL AND PROCEDURAL HISTORY ................................................. 3

II.    THE PRESENT SETTLEMENT................................................................... 8

III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS.......... 10

       A.    The Requirements of Rule 23(a) Are Satisfied in This Case ................................... 12

             1.     The Class Is So Numerous That Joinder of All Members Is
                    Impracticable............................................................................. 12

             2.     This Case Involves Questions of Law and Fact Common to the
                    Class.......................................................................................... 13

             3.     Plaintiffs' Claims Are Typical of the Class's Claims.............................. 15

             4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the
                    Class.......................................................................................... 16

             a.     Adequacy of Representation ......................................................... 16

       B.    The Requirements of Rule 23(b)(3) Are Satisfied in this Case................................. 17

             1.     Common Questions of Law and Fact Predominate Over Individual
                    Questions.................................................................................... 18

             2.     A Class Action Is Superior to Other Available Methods for the Fair
                    and Efficient Adjudication of This Case..................................... 19

       C.    The Court Should Appoint Settlement Class Counsel. ............................................ 20

       D.    Rule 23(e) Fairness, Reasonableness, and Adequacy ............................................ 21

             a.     The proposed settlement is fair and reasonable ........................................... 21

             b.     Class Counsel's representation is similarly fair and reasonable................. 22

             c.     The proposed settlement administration is reasonable ................................ 26

             d.     The Class Representatives are entitled to a reasonable service award
                    based on their service on behalf of the absent class members.................... 27

IV.    PROPOSED PLAN OF SETTLEMENTS.......................................................... 28

V.     PROPOSED PLAN OF ALLOCATION............................................................ 30

VI.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE .............................. 31

VII.    CONCLUSION.................................................................................................................. 32

75955527.4

## EXHIBITS

Exhibit A, Declaration of Andrew Ennis, with Exhibits 1 through 4 thereto

Exhibit B, Declaration of Russell Jones

Exhibit C, Declaration of Don Barry

Exhibit D, Declaration of Edward A. Cerkovnik, Jr.

Exhibit E, Declaration of Steven Straub

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. v. Moda Health Plan, Inc.*,
    2015 WL 9839771 (W.D.Wash. Nov. 3, 2015) ....................................................................25

*Abelman Art Glass Company v. EnCana Corp., et al.*,
    CV-S-05-0437-PMP-PAL...........................................................................................................6

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    276 F.R.D. 364 (C.D. Cal. 2011)..............................................................................................16

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................................18, 28

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
    __U.S. ___, 133 S. Ct. 1184 (2013)..........................................................................................18

*Aragon v. Clear Water Prod. LLC*,
    No. 15-CV-02821-PAB-STV, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) .........................30

*Beltran v. InterExchange, Inc.*,
    No. 14-CV-03074-CMA-CBS, 2018 WL 1948687 (D. Colo. Feb. 2, 2018)...............16, 18, 19

*Blanco v. Xtreme Drilling and Coil Services, Inc.*,
    No. 1:16-cv-00249, 2020 WL 3833412 (D. Colo. March 8, 2020) .....................................1, 30

*Californians for Disability Rights, Inc. v. Cal. Dept. of Trans.*,
    249 F.R.D. 334 (N.D. Cal. 2008)..............................................................................................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    308 F.R.D. 606 (N.D. Cal. 2015)........................................................................................10, 15

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
    888 F.3d 455 (10th Cir. 2017) ..................................................................................................23

*Cifuentes v. Red Robin Int'l, Inc.*,
    No. C-11-5635-EMC, 2012 WL 693930 (N.D. Cal. Mar. 1, 2012) ........................................15

*City P'ship Co. v. Jones Intercable, Inc.*,
    213 F.R.D. 576 (D. Colo. 2002) ...............................................................................................19

*In re Crocs, Inc. Sec. Litig.*,
    No. 07-CV-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013)......15, 16, 17, 19

i

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)..........................................14

*Ever-Bloom, Inc., et al. v. AEP Energy Services, Inc., et al.*,
CS-S-05-0808-MPM..........................................................................................................6

*Fairhaven Power Co. v. EnCana Corp.*,
CV-S-05-0243-PMP-PAL....................................................................................................6

*Farley v. Baird, Patrick & Co., Inc.*,
No. 90 Civ. 2168 (MBM), 1992 WL 321632 (S.D.N.Y. Oct. 28, 1992)................................20

*Fraley v. Facebook, Inc.*,
No. CV-11-01726 RS, 2012 WL 6013427 (N.D. Cal. Dec. 3, 2012)......................................30

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ...........................................................................................23, 24

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................................15, 19

*Hansberry v. Lee*,
311 U.S. 32 (1940)................................................................................................................16

*Harrington v. City of Albuquerque*,
222 F.R.D. 505 (D.N.M. 2004)............................................................................................20

*Hervis v. Vector Marketing Corp.*,
No. C-8-5198 EMC, 2012 WL 381202 (N.D.Cal. February 6, 2012)....................................27

*Horn v. Associated Wholesale Grocers, Inc.*,
555 F.2d 270 (10th Cir. 1977) ............................................................................................13

*Howell v. JBI, Inc.*,
298 F.R.D..........................................................................................................................11, 13

*In re Integra Realty Res., Inc.*,
354 F.3d 1246 (10th Cir. 2004) ...........................................................................................19

*Johnson v. Georgia Highway Exp., Inc.*,
488 F.3d 714 (5th Cir. 1974) ...........................................................................................24, 26

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976)..........................................................................................19

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 568 (E.D. Pa. 2003) ....................................................................................10

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ...................................................................................3, 11, 21

*Martinez v. Reams*,
    No. 20-CV-00977-PAB-SKC, 2020 WL 7319081 (D. Colo. Dec. 11, 2020) ........................20

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...................................................................................................18

*In re Motor Fuel Temperature Sales Practices Litig.*,
    258 F.R.D. 671 (D. Kan. 2009)................................................................................................12

*In re New Mexico Nat. Gas Antitrust Litig.*,
    607 F. Supp. 1491 (D. Colo. 1984)..........................................................................................11

*Oneok, Inc. v. Learjet, Inc.*,
    135 S. Ct. 1591 (2015)................................................................................................................1

*In re Online DVD Rental Antitrust Litig.*,
    No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ................................10, 14

*R.H. v. Premera Blue Cross*,
    2014 WL 3867617 (W.D. Wash. Aug.6, 2014).......................................................................25

*Rex v. Owens ex rel. State of Okl.*,
    585 F.2d 432 (10th Cir. 1978) ...........................................................................................12, 13

*Rhodes v. Olson Assocs., P.C.*,
    308 F.R.D. 664 (D. Colo. 2015) (citing NEWBERG ON CLASS ACTIONS §
    13:13 (5th ed.)...................................................................................................................12, 21

*Ross v. Convergent Outsourcing, Inc.*,
    323 F.R.D. 656 (D. Colo. 2018) ..............................................................................................12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .........................................................................................11, 21

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008)...............................10, 19

*DG ex rel. Stricklin v. Devaughn*,
    *594 F.3d 1188 (10th Cir. 2010)*..............................................................................................13

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)....................................................................................................18

*Taylor v. Safeway Stores, Inc.*,
    524 F.2d 263 (10th Cir. 1975) .................................................................................................15

*Texas-Ohio Energy, Inc. v. Centerpoint Energy, Inc., et al.*,
    CV-S-04-0465-PMP-PAL.................................................................................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010), *abrogated in part on other grounds by In re*
    *ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012)........................................10

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002).............................................................................18

*Tulsa City Lines v. Mains*,
    107 F.2d 377 (10th Cir. 1939) ................................................................................10

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014).......................................................................10

*Tyson Foods v. Bouaphakeo*,
    136 S.Ct. 1036 (2016)...............................................................................................18

*In re Universal Service Fund Telephone Billing Practices Litig.*,
    219 F.R.D. 661 (D. Kan. 2004).................................................................................19

*In re Urethane Antitrust Litig.*,
    237 F.R.D. 440 (D. Kan. 2006).................................................................................15

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008).................................................................................14

*In re Urethane Antitrust Litig.*,
    768 F.3d 1245 (10th Cir. 2014) .........................................................................14, 18

*Utility Savings & Refund Services, Inc. v. Reliant Energy Services, Inc., et al.*,
    CV-S-05-0110-PMP-LRL..........................................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................13

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
    743 Fed. Appx. 825 (9th Cir. 2018)...........................................................................5

*In Re Western States Wholesale Natural Gas Antitrust Litigation*,
    MDL No. 1566............................................................................................................1

*Wornicki v. Brokerpriceopinion.com, Inc*.,
    No. 13-CV-03258-PAB-KMT, 2017 WL 3283139 (D. Colo. Aug. 2, 2017)...........................30

**Statutes**

28 U.S.C. § 1715(b) ......................................................................................................32

**D.C.Colo.L.Civ.R. 7.1(a) Certification**

Counsel for Plaintiffs conferred with counsel for Defendants concerning this motion. Counsel for Defendants has indicated that defendants do not intend to file an opposition to this motion.

## INTRODUCTION

This action, along with companion cases in the District of Kansas, the Western District of Wisconsin and the Western District of Missouri, has been litigated for more than a dozen years, primarily in the District of Nevada (*In Re Western States Wholesale Natural Gas Antitrust Litigation*, MDL No. 1566), with stops in the Ninth Circuit and the United States Supreme Court. (*e.g., Oneok, Inc. v. Learjet*, *Inc.,* 135 S. Ct. 1591 (2015)). There have been seven previous partial or full class settlements with respect to claims brought by plaintiffs in Missouri, Kansas, and Wisconsin, all of which were approved by the appropriate court. Plaintiffs Breckenridge Brewery of Colorado, LLC and BBD Acquisition Co., LLC (collectively the "Plaintiffs" or "Class Representatives") now ask that this Court preliminarily approve the present class settlement with the only defendants remaining in this action, Xcel Energy Inc., and e prime Energy Marketing, Inc. (the "E Prime Defendants"), in the amount of $2.5 million.

This motion's legal analysis and the proposed procedure are virtually identical to those of the earlier settlements, which, as stated, have all been approved. Given that no formal hearing is required by law,[1] Plaintiffs ask that this motion be considered without hearing and on an expedited basis, so that this action can be concluded and the members of the settlement class can receive compensation as soon as possible.

---

[1] *See Blanco v. Xtreme Drilling and Coil Services, Inc*., No. 1:16-cv-00249, 2020 WL 3833412, at *1 (D. Colo. March 8, 2020) ("No hearing is necessary" to grant preliminary approval.)

1

This action and the companion cases have been unlike most such actions based on their scope, longevity and complexity. These cases have a much longer and more litigious history than most class actions. This action was filed in 2006, originally against ten defendant groups. After it was put into MDL No 1566 in 2007, there followed more than a dozen years of litigation in the MDL Court. In January 2009, the MDL Court ruled that only the E Prime Defendants could be sued here; the other defendants remained in the other cases.[2] There have been, as stated, partial or full settlements that have resolved parts of the Wisconsin case and all of the Missouri and Kansas cases. It is now time to resolve this action as well.

Class Counsel has not yet been fully reimbursed for advanced expenses, nor have they yet been compensated for the value of their time invested on behalf of the Class in this action. Under their engagement agreements, Class Counsel would be entitled to recover their advanced expenses (more than $2 million) plus 35% of any remaining recoveries. But because applying this formula literally would leave nothing for the Class, Class Counsel is proposing to substantially reduce the amount of their expenses to be reimbursed to $575,000, and to limit their requested recovery of attorneys' fees to approximately $673,500, so that more than $1.25 million will be available for distribution to the Class. The specific fees invested will be itemized and set forth in detail in a forthcoming Application for Fees and Expenses, but to date counsel has invested time worth approximately $8 million in this action; therefore, Class Counsel are requesting approval of a *negative* multiplier.

At this time, this Court is not being asked to determine with finality whether the settlement and the related plans of allocation are fair, reasonable, and adequate. Rather, consistent with controlling Tenth Circuit law, the question now is only whether the settlement is within the range

---

[2] MDL ECF No. 1480.

of possible approval, such that sending and publishing notice to class members, and scheduling a final approval hearing, is justified. Even so, the issues of fairness, reasonableness and adequacy will be discussed herein as they relate to whether plaintiffs and Class Counsel will fairly and adequately protect the interests of the class.[3] Plaintiffs respectfully submit that the Court should grant this motion because the Settlement is indeed fair and well within the range of possible final approval.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    FACTUAL AND PROCEDURAL HISTORY**

This action and the companion cases in other states arose from an arrangement to manipulate the prices of natural gas sold to industrial and commercial users in violation of the laws of the states of Kansas, Missouri, Wisconsin and Colorado occurring in the 2000 to 2002 timeframe. This settlement resolves claims brought by the Colorado Class against the E Prime defendants, and resolves all claims against all parties in this action. The operative Complaint defines the class members as:[4]

> All industrial and commercial direct purchasers of natural gas from the E Prime Defendants, for their own use or consumption during the period from January 1, 2000 through October 31, 2002, and which gas was used or consumed by them in Colorado. Excluded from the Class are (a) entities that purchased natural gas for resale (to the extent of such purchase(s) for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase(s) for generation); (c) defendants and their predecessors, affiliates, and subsidiaries; and (d) the federal government and its agencies.

Plaintiffs have alleged that defendants' price manipulation began approximately January 1, 2000, and continued in many respects until at least October 31, 2002. Plaintiffs have alleged, and their experts' work has confirmed, that defendants' actions resulted in class members paying

---

[3] *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006).

[4] *See* MDL ECF No. 717-2

excessive prices for natural gas. The manipulation was carried out through agreements to falsely report prices to trade publications that generated price indexes, conducting wash trades and churning activities. The manipulative conduct was facilitated in several ways, including oral communications, face-to-face meetings, electronic communications, trading platforms, and other means.[5]

The E Prime Defendants, along with other alleged co-conspirators, entered into Consent Decrees with the Commodities Futures Trading Commission (CFTC). Moreover, several other Defendants entered into Stipulation and Consent Orders with the Federal Energy Regulatory Commission (FERC), Deferred Prosecution Agreements with the United States Department of Justice (DOJ), and Cease and Desist Orders with the Securities & Exchange Commission (SEC). Additionally, numerous employees of the Defendant groups entered into plea agreements, were convicted, or entered into other agreements with the DOJ and/or the SEC.[6]   In addition to governmental actions, companion class action cases brought by consumers in other states alleging the same conspiracy to manipulate prices as that alleged herein have been settled on terms beneficial to class members and court approved.[7]

As noted above, this particular litigation has an extraordinarily lengthy history. This action was filed in 2006. Defendants have fought this and the other actions at every step. Defendants have filed numerous dispositive motions that have thus far resulted in several appeals to the Ninth Circuit, two petitions for certiorari to the U.S. Supreme Court, and one decision from the U.S. Supreme Court. All appellate actions have been decided in favor of Plaintiffs.

---

[5] Ennis Decl. ¶ 9.

[6] Ennis Decl. ¶ 10.

[7] *See e.g., infra* p. 8.

4

Plaintiffs have twice filed motions for class certification in the MDL Court. The first filing

was denied as moot when the MDL Court granted the defendants' motion for summary judgment

on grounds of preemption, which was the cause of the first Ninth Circuit appeal and ultimate

decision from the United States Supreme Court. The second class certification filing occurred in

March, 2016, after the Supreme Court upheld the Ninth Circuit's denial of Defendants' preemption

defense. The MDL Court denied that second class certification motion, but the Ninth Circuit

vacated that decision in August, 2018, remanding the cases back to the MDL Court, but with the

suggestion that this action, as well as the others, be remanded to the transferor courts for decisions

on class certification.[8]   The MDL Court granted plaintiffs' motion to remand this case to this

Court on January 14, 2019,[9] the Judicial Panel on Multi-district Litigation's remand order became

final on February 21, 2019.[10]

The parties have also actively participated in extensive discovery for many years. Plaintiffs

have responded to hundreds of interrogatories, requests for production of documents, and requests

for admissions. Altogether, Class Counsel reviewed and indexed well over one million documents,

including over 200,000 audio wave files, containing recorded conversations of natural gas traders'

telephone lines, recorded between January 1, 2000, and October 31, 2002. Class Counsel has

responded to dozens of contention interrogatories in which they identified all evidence collected

throughout discovery, including documents, audio tapes, deposition testimony and information in

---

[8] *In re Western States Wholesale Natural Gas Antitrust Litig.*, 743 Fed. Appx. 825 (9th Cir. 2018).

[9] See MDL ECF No. 3105.

[10] See MDL ECF No. 3119.

the public domain supporting their claims. Counsel have also traveled to and appeared at regular status hearings before the MDL Court throughout these many years.[11]

While this and the companion MDL cases were pending, five earlier-filed companion cases reached settlement: *Texas-Ohio Energy, Inc. v. Centerpoint Energy, Inc., et al.*, CV-S-04-0465-PMP-PAL; *Fairhaven Power Co. v. EnCana Corp.*, CV-S-05-0243-PMP-PAL; *Abelman Art Glass Company v. EnCana Corp., et al.*, CV-S-05-0437-PMP-PAL; *Utility Savings & Refund Services, Inc. v. Reliant Energy Services, Inc., et al.*, CV-S-05-0110-PMP-LRL; and *Ever-Bloom, Inc., et al. v. AEP Energy Services, Inc., et al.*, CS-S-05-0808-MPM (collectively, the "California Class Actions").[12] In the first wave of the California settlements, the class members settled with four of the defendants for $2.4 million, and with another defendant for $700,000.[13] The California Class Actions alleged antitrust violations against many of the same Defendants arising from manipulation of natural gas prices between January 1, 2000 and October 31, 2002.[14]

On April 25, 2007, the MDL Court found that the California Settlement Agreements "appear to be fair and reasonable" and warranted notice to the proposed class.[15] The Court preliminarily approved the settlements, stating that "the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes in that: (a) there are hundreds of members of the class; (b) the claims of the class representatives are typical of those

---

[11] Ennis Decl. ¶ 12.

[12] The claims in the present cases arise from the same price manipulation claims against many of the same defendants that were made in the California Class Actions.

[13] MDL ECF No. 492 (D. Nev. April 3, 2007).

[14] Order Preliminarily Approving Settlements, Certifying a Settlement Class, and Authorizing Dissemination of Notice, MDL ECF. No. 510 (D. Nev. May 3, 2007).

[15] *Id.*

75955527.4

of the other members of the class; (c) there are questions of fact and law that are common to all members of the class; and (d) the class representatives will fairly and adequately protect the interests of the class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately represent the class."[16] The MDL Court also found that a class action was superior to other available methods, and that common questions of fact and law predominate over individual questions. On September 5, 2007, the MDL Court found that those settlements were fair, and issued its final approval.[17]

On February 7, 2017, the MDL Court preliminarily approved the first four class settlements in the MDL cases.[18]  On May 17, 2017, the MDL Court preliminarily approved the second set of class settlements, this time specific to class members in Missouri and Kansas,[19] and, in April, 2019 it preliminarily approved the final settlements of the Kansas and Missouri cases. In April, 2019, the MDL Court also preliminarily approved additional settlements with two defendant groups in the Wisconsin case.[20]  The MDL Court granted final approval of all of those settlements.[21]

The MDL Court is not the only Court to review and approve class settlements similar to this one.  In June 2018, the Missouri and Kansas plaintiffs settled with the Reliant defendants in connection with those defendants' participation in the Chapter 11 bankruptcy of their parent company, Genon Inc. After mediated arms-length negotiations, the parties reached a settlement that the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy

---

[16] MDL ECF No. 510 (D. Nev. May 3, 2007).

[17] Minutes of Proceedings, ECF. No. 651 (D. Nev. Sept. 5, 2007).

[18] MDL ECF No. 2795

[19] MDL ECF No. 2896

[20] MDL ECF No. 3126

[21] MDL ECF Nos. 2902, 2903, 2904, 2905, 2949, 2954, 2956, 3152, 3153, 3156

7

Court") reviewed and approved.[22]  Though the settlement was not treated as a class claim under bankruptcy procedures, the parties agreed to undertake a notice program that mirrored the class notice provided in other settlements.[23] After approval in the Bankruptcy Court, the MDL Court reviewed the basic settlement and notice structure, and formally dismissed the Reliant defendants. And after the cases were remanded to their respective transferor courts, in April 2020, the United States District Court for the Western District of Wisconsin reviewed and preliminarily approved an additional Wisconsin settlement with one defendant group.[24]  After notice to putative class members, the Wisconsin Court granted final approval of that settlement.[25]

For the same reasons the MDL Court, the Bankruptcy Court, and the Wisconsin Court preliminarily and finally approved those settlements, this Court should preliminarily approve the Settlement here.

## II.    THE PRESENT SETTLEMENT

The Settlement requires the preliminary certification of a class of industrial and commercial purchasers in Colorado who purchased natural gas for their own use or consumption from one of the E Prime Defendants between January 1, 2000, and October 31, 2002.[26]  Under the terms of the settlement, Defendants will pay the Settling Plaintiffs $2.5 million. This figure

---

[22] Bankruptcy Court ECF No. 1779.

[23] MDL ECF No. 3044.

[24] Arandell Corp. v. Xcel Energy Inc., Case No. 3:07-cv-00076-wmc (W.D. Wisc.) ("Wisconsin"); ECF No. 115.

[25] Wisconsin ECF No. 245.

[26] Ennis Decl., Exhibit 1.

8

compares favorably to the $2.75 million that the E Prime Defendants paid to settle *both* the Missouri and Kansas cases in 2018.[27]

Upon the Settlement becoming final, Settling Plaintiffs and Class Members will release any and all claims against the E Prime Defendants relating to the subject matter of this lawsuit. This settlement resolves the present action in its entirety.

The Settlement was the product of sometimes intense and always arms-length negotiations involving multiple experienced and informed counsel on both sides and, for a time, Eric Green, one of the most respected mediators in the United States.[28]

Before entering into this Settlement, Class Counsel thoroughly evaluated the law and facts in order to assess the merits of plaintiffs' claims as well as the merits of the E Prime Defendants' defenses. Class Counsel retained and consulted with experts concerning the facts discovered, the merits of the claims and defenses raised in this litigation, and recoverable damages. Class Counsel considered the benefits to the class to be obtained under the Settlements, as well as the expense, burdens, risks and uncertainties associated with continuing litigation – including the passage of time and the E Prime defendants' assertion that any judgment may be uncollectible.[29] All things considered, Plaintiffs believe that the Settlement is fair and reasonable to the Class, and should be approved.

---

[27] *Id.*

[28] Ennis Decl. ¶ 15. The parties participated in a prior mediation with mediator Daniel Weinstein, a former California state court judge, on September 9, 2009, in San Francisco. That mediation did not result in any settlements.

[29] Ennis Decl. ¶ 14.

75955527.4

### III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS.

"[C]ourts have held that the presumption in favor of voluntary settlement agreements 'is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.'"[30] "The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."[31]  Compromise is particularly favored in antitrust litigation, which is notoriously difficult and unpredictable.[32] It is well-established that price-fixing actions like this one are particularly appropriate for class certification, and many courts have so held.[33]

Settlement classes must meet the requirements of a typical Rule 23 analysis. Rule 23 provides that a court should certify a class where, as here, the Plaintiffs satisfy the four

---

[30] *Tuten v. United Airlines, Inc*., 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir.2010)).

[31] *Tulsa City Lines v. Mains*, 107 F.2d 377, 380 (10th Cir. 1939).

[32] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 568, 577 (E.D. Pa. 2003).

[33] *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 630 (N.D. Cal. 2015) ("CRT I"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 315 (N.D. Cal. 2010) ("LCD"), *abrogated in part on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 756 (9th Cir. 2012); *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ("*Online DVD*"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *7 (N.D. Cal. Sept. 29, 2008) ("*SRAM*").

10

prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the

three criteria set forth in Rule 23(b).[34] Plaintiffs here satisfy all requirements of Rule 23(a) and

satisfy Rule 23(b)(3), which provides that "an action may be maintained as a class action" if "the

court finds that the questions of law or fact common to the members of the class predominate over

any questions affecting only individual members, and that a class action is superior to other

available methods for the fair and efficient adjudication of the controversy." Finally, Rule 23(e)

requires the court to evaluate the entire settlement at a hearing for final approval and determine its

overall fairness, adequacy and reasonableness.

"A class action settlement must be found to be fair, adequate and reasonable to the class as

a whole in order to gain the approval of the court."[35]   While the inquiry in different cases may

vary, in the Tenth Circuit, courts generally consider the following four factions in making fairness

determinations::

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether
> serious questions of law and fact exist, placing the ultimate outcome of the litigation
> in doubt; (3) whether the value of an immediate recovery outweighs the mere
> possibility of future relief after protracted and expensive litigation; and (4) the
> judgment of the parties that the settlement is fair and reasonable.[36]

A proposed settlement of a class action should therefore be preliminarily approved where

it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious

---

[34] *Howell v. JBI, Inc.*, 298 F.R.D. at 654 (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S.
591, 614 (1997)).

[35] "*In re New Mexico Nat. Gas Antitrust Litig.,* 607 F. Supp. 1491, 1497 (D. Colo. 1984)
(citations omitted).

[36] *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *Lucas
v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006).

75955527.4

deficiencies, [and] does not improperly grant preferential treatment to class representatives."[37]
"The standards for preliminary approval of a class settlement are not as stringent as those applied
for final approval."[38] "The object of preliminary approval is for the Court 'to determine whether
notice of the proposed settlement should be sent to the class, not to make a final determination of
the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry
is less demanding than the standard that applies at the final approval phase.'"[39] As such, though
the Court must consider these factors in depth at the final approval hearing, they are a useful guide
at the preliminary approval stage as well."[40] The requirements of Fed. R. Civ. P. 23 and the four
Tenth Circuit factors strongly support granting preliminary approval here.

## A.    The Requirements of Rule 23(a) Are Satisfied in This Case

### 1.    The Class Is So Numerous That Joinder of All Members Is Impracticable

The first requirement for class certification requires that the class be so numerous that
joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). In class action suits
there must be presented some evidence of established, ascertainable numbers constituting the class
in order to satisfy even the most liberal interpretation of the numerosity requirement. There is,
however, no set formula to determine if the class is so numerous that it should be so certified.[41]

---

[37] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

[38] *Id.*

[39] *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citing NEWBERG ON CLASS ACTIONS § 13:13 (5th ed.).

[40] *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 680 (D. Kan. 2009).

[41] *Rex v. Owens ex rel. State of Okl.,* 585 F.2d 432, 436 (10th Cir. 1978).

Courts have generally found that the numerosity requirement is satisfied when there are more than twenty class members. [42]

Here, the likely size of the Class is known from Defendants' records. As noted, the Class is limited to those commercial and industrial natural gas users who purchased gas directly from one of the E Prime Defendants between January 1, 2000, and October 31, 2002. Defendants produced in 2016 records including thousands of pages of invoices for such sales. From those invoices, the parties can determine that there are approximately 1,100 such purchasers. The invoices allow the parties to know how much gas each purchaser bought, and how much it paid to the E Prime Defendants. The proposed Settlement Class thus readily satisfies Rule 23(a)'s numerosity requirement.

### 2. This Case Involves Questions of Law and Fact Common to the Class

The second requirement for class certification requires that class members share common issues of law or fact. Fed. R. Civ. P. 23(a)(2). A plaintiff must establish that the class members' claims "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.[43] Only one significant issue is necessary to satisfy commonality.[44] Allegations of a price-fixing conspiracy are often held to

---

[42] *Id.* ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."); *see also Howell*, 298 F.R.D. at 655 (citing *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654-56 (C.D.Cal. 2000) (citations omitted)); *see also, Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (41-46 class members); *Californians for Disability Rights, Inc. v. Cal. Dept. of Trans.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

[43] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[44] *Id.*; *DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1195 (10th Cir. 2010);*

satisfy commonality, as "the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."[45]

In considering price-fixing cases like this one, courts typically look to three primary common issues: (1) a violation of the antitrust laws; (2) plaintiffs suffered injury resulting from the violation; and (3) the methodology of determining damages.[46] Each of these elements is subject to common proof in this case. Plaintiffs have alleged and provided substantial evidence that Defendants participated in a nationwide price manipulation conspiracy that resulted in increased prices for natural gas being sold across the country.[47] And whether the Settling Defendants participated in the alleged arrangement can be proven using evidence common to all Plaintiffs. In other words, either Plaintiffs can prove that Defendants did what has been alleged, or they cannot, but the evidence will not vary from plaintiff to plaintiff. Likewise, because Plaintiffs have alleged that Defendants manipulated the price indices that formed the basis for the inflated prices each class member ultimately paid for natural gas, the method of calculating impact is common to all class members.[48] Lastly, as described by Plaintiffs' experts in these cases, the methodology for establishing the ultimate measure of damages relies on proof common to all Plaintiffs.[49] Plaintiffs' claims plainly satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2).

---

[45] *In re Urethane Antitrust Litig*., 768 F.3d 1245, 1254 (10th Cir. 2014); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at \*3 (N.D. Cal. June 5, 2006) ("*DRAM*') (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) ("*Rubber Chems*.")). *See also Online DVD*, 2010 WL 5396064, at \*3.

[46] *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008).

[47] Ennis Decl. ¶ 9.

[48] Harris Decl. to Motion for Class Certification, ECF. No. 2315-1, ¶¶ 44-56.

[49] *Id.* ¶¶ 72-76; Dwyer Decl. to Motion for Class Certification, Dkt. No. 2315-5, ¶ 18.

14

### 3.    Plaintiffs' Claims Are Typical of the Class's Claims

The third requirement for maintaining a class action is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement. "The interests and claims of the lead plaintiff and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."[50] "Class representatives' claims "need not be substantially identical" to those of absent class members.[51]

Typicality requirements are often satisfied where plaintiffs allege that the defendants engaged in a common price-fixing scheme relative to all members of the class.[52] In such cases, courts routinely find claims typical of absent class members.[53] "This is true even where 'the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class.'"[54]

Here, the claims of the Plaintiffs and the class members arise from the same manipulative conduct engaged in by the Settling Defendants, and the claims of the named Plaintiffs and the class

---

[50] *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 WL 4547404, at *6 (D. Colo. Aug. 28, 2013);

[51] *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 271 n. 8 (10th Cir. 1975); *see also Cifuentes v. Red Robin Int'l, Inc.*, No. C-11-5635-EMC, 2012 WL 693930, at *5 (N.D. Cal. Mar. 1, 2012); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[52] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 447 (D. Kan. 2006).

[53] *Id.*; *see also CRT I*, 308 F.R.D. at 613 (internal quotation marks, brackets, and citations omitted).

[54] *CRT I*, 308 F.R.D. at 613  (quoting LCD, 267 F.R.D. at 300); *see also  In re Urethane Antitrust Litig.*, 237 F.R.D. at 447  (inquiry focuses on the defendants' conduct, not on plaintiffs' individual positions).

members in each state are the same, i.e., alleged violations of the Colorado state antitrust statutes.[55] As such, the claims of the Plaintiffs are identical to the claims of the class, excepting only the amounts of natural gas purchased at the manipulated price. The typicality requirement of Rule 23(a)(3) is therefore satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs satisfy the fourth requirement, that they fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). The fairness and adequacy of representation is the assurance that constitutional due process is afforded to absent class members, as an ultimate judgment will be entered that will bind them.[56]

Courts have regularly found this requirement satisfied in price manipulation cases.[57] "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees."[58] As discussed below, the "adequacy and fairness" requirements of Rule 23(a)(4) are met here.

### a. Adequacy of Representation

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named

---

[55] Ennis Decl. ¶ 19.

[56] *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).

[57] *Beltran v. InterExchange, Inc*., No. 14-CV-03074-CMA-CBS, 2018 WL 1948687, at *7 (D. Colo. Feb. 2, 2018); *see also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 374 (C.D. Cal. 2011) ("*Auto Lighting*") (where plaintiffs have "alleged a broad conspiracy, courts have not required that the representative has purchased from all of the defendants or that he has been adversely affected by all of the means and methods by which the alleged conspiracy was implemented" (brackets and ellipsis in original omitted)).

[58] *In re Crocs, Inc. Sec. Litig*., 2013 WL 4547404, at *6.

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[59] Both the named Plaintiffs and Class Counsel here understand their obligations to class members and stand ready to fulfill those obligations without outside conflict.[60]

Second, in determining the adequacy of representation, it must be shown that class members have received vigorous and skilled representation by Plaintiffs, the potential class representatives. Plaintiffs exhibited such willingness for more than a decade. As shown by their Declaration, the Colorado Plaintiffs have accept and have been ready to carry out their responsibilities to the class members.[61]

Plaintiffs have retained skilled counsel with extensive experience in prosecuting antitrust class actions. Class Counsel were at all times fully prepared to fully prosecute these claims on behalf of all of the class members. Polsinelli PC and the Barry Law Firm LLC have vigorously pursued the litigation on behalf of Plaintiffs and the proposed class for nearly two decades. They devoted the substantial time, resources, and leadership necessary to prosecute this action.[62] Plaintiffs therefore satisfy the adequacy requirement of Rule 23(a)(4).

### B.    The Requirements of Rule 23(b)(3) Are Satisfied in this Case

To be certified under Rule 23(b)(3) a class must meet two additional requirements: "[c]ommon questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient

---

[59] *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *8.

[60] *See* Declarations of Class Counsel, Exhibits A to C; s*ee also*, Declaration of Edward A. Cerkovnik, Jr. (Cerkovnik Decl.) attached as Exhibit D.

[61] *See* Cerkovnik Decl. ¶ 4.

[62] See Declarations of each Class Counsel, Exhibits A to C.

adjudication of the controversy." [63] As noted by the Supreme Court: "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." [64]

### 1. Common Questions of Law and Fact Predominate Over Individual Questions

Courts commonly find the "predominance" requirement of Rule 23(b) satisfied in direct purchaser horizontal price-fixing cases.[65] Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members."[66] The focus of the predominance inquiry is whether the proposed Class is "sufficiently cohesive to warrant adjudication by representation."[67] That each class members' damages may vary does not negate a finding that common questions of law "predominate."[68]

---

[63] *Amchem*, 521 U.S. at 615 (internal quotation marks omitted).

[64] *Id.* at 625.

[65] *See, e.g., In re Urethane Antitrust Litig.*, 768 F.3d at 1254 (predominance requirement met in case alleging conspiracy to fix prices for polyurethane chemical products by artificially inflating baseline for price negotiations with purchasers); *Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2018 WL 1948687, at *8 (D. Colo. Feb. 2, 2018) (predominance met in case involving conspiracy to artificially deflate the baseline for au pairs' wages); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814-15 (7th Cir. 2012); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 300 (3d Cir. 2011); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." (internal quotation marks omitted)).

[66] *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, __U.S. ___, 133 S. Ct. 1184, 1196 (2013) (internal quotation marks, citation, and brackets omitted) (emphasis added).

[67] *Id.* at 1196 (quoting *Amchem*, 521 U.S. at 623).

[68] *Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).

Here, common issues predominate with respect to Plaintiffs' proof of the three elements of their claim: (1) that Defendants participated in a conspiracy or arrangement to fix prices in violation of the states' antitrust laws; (2) that Class members suffered antitrust injury *(i.e.,* "impact") as a result of the conspiracy; and (3) the damages they sustained. Plaintiffs can establish each of the above elements through "generalized proof" applicable to the Class as a whole.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Case

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." If common questions are found to predominate in an antitrust action, courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied.[69] Here, it would be incredibly inefficient to litigate the predominating common issues in thousands of individual proceedings in two different states. The prosecution of separate actions would also create the risk of inconsistent rulings, and possible prejudice. In addition, "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress."[70] Class Members would be effectively foreclosed from pursuing their claims absent class certification.[71] In these cases, the prosecution of this number of individual claims would be nearly

---

[69] *See*, *e.g*., *In re Integra Realty Res., Inc*., 354 F.3d 1246, 1263 n. 4 (10th Cir. 2004); Beltran, 2018 WL 1948687, at *14; *In re Crocs, Inc. Sec. Litig*., 2013 WL 4547404, at *10; *In re King Res. Co. Sec. Litig*., 420 F. Supp. 610, 616 (D. Colo. 1976)..

[70] *SRAM*, 2008 WL 4447592, at *7; *see also In re Universal Service Fund Telephone Billing Practices Litig*., 219 F.R.D. 661, 679 (D. Kan. 2004) (class action is "perhaps the only feasible way for plaintiffs to" pursue claims involving insubstantial amounts).

[71] *Hanlon v Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) ("[M]any claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."); *see also City P'ship Co. v. Jones*

impossible. Given the Plaintiffs' showings in this case, it is clear that the only way to satisfy Fed. R. Civ. P. 1's requirement of speedy, inexpensive and just resolution in this particular situation is to certify the class.[72]

### C.    The Court Should Appoint Settlement Class Counsel.

Rule 23(c)(1)(B) states that "[a]n order certifying a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court must consider:  [i] the work counsel has done in identifying or investigating potential claims in the action; [ii] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [iii] counsel's knowledge of the applicable law; and [iv] the resources counsel will commit to representing the class."

Class Counsel asks that Polsinelli PC and The Barry Law Firm LLC be appointed as Settlement Class Counsel. The firms are willing and able, as they have done for the last fifteen years, to continue to prosecute this action to finality and to ensure a fair and reasonable distribution of more than $1 million in compensation to the members of the Settlement Class.[73] The work done and funds expended to date supports the conclusion that these firms deserve to be appointed as Class Counsel for purposes of the Settlement.[74] The firms meet the criteria of Rule 23(g)(1)(A).[75]

---

*Intercable, Inc*., 213 F.R.D. 576, 590 (D. Colo. 2002) (class treatment appropriate where class included a large number of class members each with a relatively small stake in the outcome).

[72] Fed. R. Civ. P. 1

[73] *See* Declarations of each Class Counsel, Exhibits A to C.

[74] *See Martinez v. Reams,* No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *10 (D. Colo. Dec. 11, 2020); *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

[75] *Cf. Farley v. Baird, Patrick & Co., Inc.*, No. 90 Civ. 2168 (MBM), 1992 WL 321632, at *5 (S.D.N.Y. Oct. 28, 1992) ("Class counsel's competency is presumed absent specific proof to the contrary by defendants").

D.    **Rule 23(e) Fairness, Reasonableness, and Adequacy**

Following the preliminary approval of the proposed Class Settlement, issuance of notice and other procedural steps, a final hearing will be held to approve the final settlement under Fed. R. Civ. P. 23(e). It is at this final hearing that the Court will examine the overall fairness of the settlement under the four Tenth Circuit factors.[76]

a.    **The proposed settlement is fair and reasonable**

In determining the fairness of the representation of the class at this preliminary stage, the Court must ensure the settlement was fairly and honestly negotiated.[77] Courts in the Tenth Circuit easily confirm settlement fairness where parties have "vigorously advocated their respective positions" throughout a case.[78]  And where, as here, the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.[79] Likewise, the fact that the parties' settlement here did not involve any discussion of or agreement on fees further demonstrates the honest and fair negotiation of a meaningful class settlement.[80]

Courts in the Tenth Circuit also must evaluate whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.[81]  While Plaintiffs and Class Counsel believe in the strength of their case, the e Prime Defendants would vehemently contest class

---

[76] Rutter & Wilbanks Corp., 314 F.3d at 1188..

[77] *Rhodes, 308 F.R.D. at 667.*

[78] *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693(D. Colo. 2006).

[79] *Id*. (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*. 396 F.3d 96, 116 (2d Cir. 2005)).

[80] *Id*. (citing *Manual for Complex Litig., Fourth* § 21.7 at 335 (2004) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable.")).

[81] *Rutter & Wilbanks Corp.,* 314 F.3d at 1188; *Lucas,* 234 F.R.D. at 693.

certification, would no doubt mount legal challenges to Plaintiffs' experts and damages models, and would vigorously defend themselves at trial, as they have throughout these cases.

In addition, this Court must determine at the final approval stage, whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. This analysis is informative at the preliminary approval stage as well. Given the contentious and lengthy history of this case, there can be little doubt that a final result through trial and likely appeals, remains years in the future. With the inherent uncertainty of the remaining litigation, trial, and appeals, the certainty of result now – particularly after 15 years' of litigation – will provide welcome relief to Plaintiffs and the absent class members they represent.

This Court must ultimate weight whether the judgment of the parties that the settlement is fair and reasonable.  As explained above and throughout, both Plaintiffs and Class Counsel have evaluated the strengths, risks, and remaining decision points in determining that this settlement is fair, reasonable, and appropriate at this time.[82]

### b.    Class Counsel's representation is similarly fair and reasonable.

Although awards of attorneys' fees and expenses are not determined until the settlement becomes final, fairness dictates consideration of those issues at this point because the amount of expenses awarded will reduce the amount payable to the class. The contingency fee agreement[83] entered into between Class Counsel and Plaintiffs provide for reimbursement of actual expenses incurred to date as a first step in settlement distribution. As stated, counsel seeks to recover in this settlement only a portion of the expenses they have incurred.[84] Expenses include such things as

---

[82] Cerkovnik Decl., ¶ 7.

[83] Ennis Decl., Exhibit 2.

[84] Ennis Decl. ¶ 25.

service of subpoenas, stenographic and videotaped depositions, electronic discovery data management, copies, service vendors, expert witnesses and appellate counsel, and reasonable travel expenses. The unpaid expenses counsel have incurred to date in this action is more than $2.0 million.[85] Of that, however, Counsel are seeking to recover only about $575,000, roughly 27% of the expenses incurred.

The contingency fee agreements between Class Counsel and Plaintiffs specify a contingency legal fee to be paid to class counsel of 35% after deduction of expenses. Again, however, Class Counsel will ask this Court to (1) limit the reimbursement of expenses to $575,000, more than $1.5 million less than the expenses advanced on behalf of the Class, and (2) approve fees of only $673,500, which is 27% of the Settlement Amount.[86]  Class Counsel's proposed recovery here will fall well short of the attorney time and out-of-pocket expenses invested in this case. Importantly, none of Class Counsel's fees or expenses has been fronted or paid by Plaintiffs, and none will be owed outside of this Settlement.[87]

With regard to fees for Class Counsel, the Tenth Circuit has approved a "percentage of the funds" method. The typical range of attorneys' fees in the Tenth Circuit is 23.7% to 33.7%,[88] and the Court has the ability to adjust these percentages up or down to account for the circumstances in each case.[89] Here, fees in the amount of 27% of the Settlement are reasonable. The unusual and burdensome circumstances of these cases, especially the length of time Class Counsel has worked

---

[85] See Declarations of each Class Counsel, Exhibits A to C.

[86] Ennis Decl., Exhibits 3 and 4.

[87] Jones Decl. ¶ 15.

[88] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 459 (10th Cir. 2017).

[89] *See Gottlieb v. Barry,* 43 F.3d 474, 488 (10th Cir. 1994)..

on this action without payment, and the relative success of plaintiffs to date, all warrant the exercise

of the Court's discretion to award the 27% fee requested – less than the 35% provided for in the

Contingency Fee Agreements, and fully consistent with the Tenth Circuit's 20-33% gross fee

range.

In a "percentage of the funds" case, the Tenth Circuit held in *Gotlieb v. Barry.,* that the

twelve factors the Fifth Circuit announced in *Johnson v. Georgia Highway Exp., Inc.*[90] should

govern the analysis in the Tenth Circuit. The *Gotlieb* court identified those twelve factors as: (1)

the time and labor required, (2) the novelty and difficulty of the question presented by the case,

(3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment

by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed

or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount

involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10)

the 'undesirability' of the case, (11) the nature and length of the professional relationship with the

client, and (12) awards in similar cases."[91]

**(1) The time and labor required, (2) the novelty and difficulty of the case, (3) the sill requisite to perform the legal service properly, (4) the preclusion of other employment due to acceptance of the case, and (9) the experience, reputation, and ability of the attorneys involved.** Class Counsel has pursued this case since 2006, and has invested more than 16,000

hours and more than $2 million in out of pocket expenses. Dozens of talented attorneys have

devoted substantial time to this case over the last fifteen years. Each of those attorneys eschewed,

at times, other opportunities for other clients because of the demands presented by this case. And

---

[90] 488 F.3d 714, 717-18 (5th Cir. 1974).

[91] *Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994)..*

though this case presents a straightforward horizontal price fixing theory, defendants have advanced several variations of preemption or preemption-like defenses, in addition to summary judgment motions based on multiple theories, each requiring substantial litigation to overcome. The investment, ability, and expertise of counsel are all apparent when comparing the complexity of this litigation to the results obtained with this settlement.  The massive amount of motion practice and discovery completed, and the dozens of appearances before the MDL Court, along with the successful results on legal issues at every level of the federal courts, could not have been accomplished without Class Counsel's commitment and expertise in both antitrust law and in class actions.

**(5) The customary fee, (6) whether the fee is fixed or contingent, and (12) awards in similar cases**.  As noted in the contingency fee agreements, all fees and expenses in this litigation have been fronted by Class Counsel, and any reimbursement is contingent upon recoveries, if any, received by Class Members in this litigation. Counsel has invested more than $55 million in legal time pursuing the four related cases, including more than $8 million specifically incurred in this case, and has advanced over $8.5 million in expenses and costs for the combined cases, including approximately $2 million in this case, over more than nearly fifteen years. In addition, Class Counsel have reviewed Tenth Circuit cases with respect to fee awards and have found that courts routinely award as much as 33% of gross recovery. That percentage, however, is discretionary, and some cases have approved 35% contingency awards where the circumstances warrant.[92] The length and breadth of these cases, as described above, clearly warrant a fee award of 27% of the gross settlement amount.

---

[92] *See A.M. v. Moda Health Plan, Inc.*, 2015 WL 9839771, at *3 (W.D.Wash. Nov. 3, 2015); *R.H. v. Premera Blue Cross*, 2014 WL 3867617, at *3 (W.D. Wash. Aug.6, 2014).

**(7) Time limitations imposed by the client or the circumstances, and (11) the nature and length of the professional relationship with the client.** Though there are no specific time limitations imposed here, the case has been litigated for nearly 15 years, and involves conduct that occurred 20 years ago. Class Counsel has a long-standing relationship with the class representatives, beginning nearly 20 years ago and continuing throughout the 15-year history of this case.

**(8) The amount involved and the results obtained.** Like nearly every issue in this case, the proper measure and amount of damages has been hotly contested. Plaintiffs believe that class-wide damages could exceed $100 million after a class action jury trial on the merits.[93] But because of the relative uncertainty of that outcome, the history of the cases, and the desire for finality of result, the Class Representatives and Class Counsel agree that the proposed $2.5 million settlement represents a fair and appropriate settlement in this matter. As mentioned above, this $2.5 million settlement compares favorably to the Xcel Defendants' prior settlement totaling $2.75 million to resolve both the Missouri and Kansas cases combined. The MDL granted preliminary and final approval of that settlement in 2019.[94]

**c.    The proposed settlement administration is reasonable**

Courts also look at administrative fees in evaluating fairness. Following preliminary approval, A.B. Data, Ltd. will conduct the distribution of notices, managing websites, staffing dedicated informational telephone lines, communication with potential class members,

---

[93] The last of the twelve *Johnson* factors is the "undesirability" of the case. While this case did not impose, by its nature, a direct hardship to Class Counsel or Plaintiffs, Class Counsel did endure and overcome the vigorous legal defenses advanced and the substantial investment of attorney time and out-of-pocket expense required to defeat those legal defenses at every level of the federal courts.

[94] MDL ECF No. 3156

26

documenting opt-outs if any and correspondence. Counsel recommends that A.B. Data, Ltd. serve as class administrator in these second settlements as well. Plaintiffs seek an allowance for total administrative fees (through final approval and settlement claims) not to exceed $100,000 for these settlements.[95] With a class consisting of roughly 1,100 members, many of which may have moved or otherwise undergone changes since the Relevant Time Period, an administrative fee of $100,000 is reasonable.[96]

> **d.    The Class Representatives are entitled to a reasonable service award based on their service on behalf of the absent class members.**

Lastly, the Court must consider the propriety and amount of potential service awards to individual class representatives. The two Plaintiffs here, Breckenridge Brewery of Colorado, LLC and BBD Acquisition Co., LLC, have served as named Plaintiffs and have participated in this litigation for more nearly 15 years. In addition to monitoring the litigation, they have participated in discovery, including locating decades-old records, responding with information, consulting with counsel, and giving depositions. Neither the contingency fee agreements nor the Settlement Agreements set a specific dollar amount or a percentage amount for service awards. However, based on the awards received by other named plaintiffs in the companion MDL actions, a joint award to the Breckenridge Plaintiffs in the amount of $50,000 is reasonable and appropriate, and Plaintiffs suggest an award in that amount.[97]

---

[95] Ennis Decl. ¶ 22.

[96] *See, e.g., Hervis v. Vector Marketing Corp.*, No. C-8-5198 EMC, 2012 WL 381202 at *6 (N.D.Cal. February 6, 2012) (approving award of $250,000 in administration costs where claims administrator sent out 68,487 notices).

[97] Ennis Decl. ¶ 25.

75955527.4

IV.    **PROPOSED PLAN OF SETTLEMENTS**

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Under Rule 23(c)(2)(b), class members are entitled to the "best notice practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. The notice must state in plain, easily understood language:

- the nature of the action;

- the definition of the class certified;

- the class claims, issues, or defenses;

- that a class member may enter an appearance through counsel if the member so desires;

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.*

Notice to the class must include "individual notice to all members who can be identified through reasonable effort."[98] Plaintiffs propose that a long-form notice in the form attached as Exhibit 3 to the Ennis Declaration be given by mail or email to each Class Member who may, using reasonable efforts, be identified. Here, Plaintiffs are able to identify most if not all of the potential Class Members by reference to invoices and other customer information produced by the E Prime Defendants, documents and information produced by local natural gas distribution

---

[98] *Amchem*, 521 U.S. at 617.

companies, and nitrogen oxide emissions reports filed with the EPA and EIA, which identify those entities who burn natural gas.[99]

In addition, Plaintiffs propose that a short-form notice be published in major newspapers of general circulation in Colorado. Because so many Class Members should be identifiable from Defendants' records, it does not seem necessary to incur the expense of publishing notices in business journals, trade publications, websites, online social networks, or online search engines.[100] Even so, the Settlement Administrator will create and host a website where class members can access all settlement agreements, the full long and full short form notices, claim forms (once appropriate), relevant Court orders, and other important documents, and will create and maintain an automated toll-free settlement helpline.[101]

The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B). The long form notice will clearly and concisely explain the nature of the action and the terms of the Settlements.[102] It will provide a clear description of who is a member of the class and the binding effects of class membership.[103] And it will explain how to exclude oneself from the class, how to object to the Settlements, how to obtain copies of papers filed in the case and how to contact class counsel.[104]

---

[99] Ennis Decl. ¶ 17.

[100] Ennis Decl. ¶ 26; Straub Decl. ¶¶ 6 – 12, 17

[101] Straub Decl., ¶¶ 13 – 15.

[102] Ennis Decl., ¶ 25.

[103] *Id.*

[104] *Id.*

The short-form notice will also identify class members, explain the basic terms of the Settlements and explain the consequences of class membership.[105] It will explain how to obtain more information about the Settlement.[106] The short-form notice will be published after the long-form notices have been mailed and e-mailed to known potential class members.[107]

Such notice plans are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members as well as the best notice practicable under the circumstances.[108] Similar notice plans have been approved recently by several courts in the Tenth Circuit.[109]

The notices fulfill the requirements of Rule 23 and due process. Accordingly, the Court should approve the notices for distribution and publication. As noted above, Plaintiffs' Counsel recommend the retention of A.B. Data, Ltd. as settlement administrator.

## V.    PROPOSED PLAN OF ALLOCATION

To arrive at the proposed plan of allocation of the settlement amount, the proposed class representatives and their Class Counsel considered the dollar amount of the aggregate purchases from the E Prime Defendants in Colorado, as shown in Defendants' invoices and records, as well as the publicly-available EIA data. Plaintiffs therefore propose that Settlement funds be allocated

---

[105] Ennis Decl. ¶ 26.

[106] *Id.*

[107] Ennis Decl. ¶ 27.

[108] *See Moore's Federal Practice* § 23.63[8][a], § 23.63[8][b] (3d ed. 2003); *Fraley v. Facebook, Inc.*, No. CV-11-01726 RS, 2012 WL 6013427, at *2 (N.D. Cal. Dec. 3, 2012).

[109] *See Blanco, 2020 WL 4041456, at *2; Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *1 (D. Colo. Dec. 18, 2018)*; Wornicki v. Brokerpriceopinion.com, Inc*., No. 13-CV-03258-PAB-KMT, 2017 WL 3283139, at *4 (D. Colo. Aug. 2, 2017).

on *a pro rata* basis within the Class based on the dollar value of each claiming class member's

purchase(s) of natural gas in proportion to the total claims filed by all members in the Class. In

determining the *pro rata* allocation of Settlement funds, claiming class members' purchases will

be valued according to the proportionate purchases of natural gas. The resulting percentages will

be multiplied against the net Settlement fund for the Class (total Settlements minus all expenses

and attorneys' fees) to determine each electing claimant's *pro rata* share of the Settlement fund.[110]

## VI.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the

Court may hear all evidence and argument necessary to evaluate the proposed Settlement. At that

hearing, members of the Settlement Class, or their counsel, may be heard in support of or in

opposition to the Settlement. Plaintiffs propose the following schedule:

| Date | Event |
|---|---|
| No later than thirty days after the Court enters its preliminary approval order. | Long-form notice sent to class members by U.S. mail or electronic mail, publication of website, and activation of telephone information system; short-form notice published in the newspapers of general circulation in Colorado; and copy of the class notices and settlement agreement posted on the internet website www.naturalgasantitrustsettlement.com. |
| Sixty days after the notices have been sent and published. | Deadline to request exclusion from the class, object to the settlement, and/or file a notice of intention to appear at the fairness hearing. |
| Two weeks after the prior deadline. | Class Counsel to provide Settling Defendants' counsel the list of all persons or entities who have timely requested exclusion from the settlement class, as provided in the settlement agreement. |
| Two weeks after the prior deadline. | Deadline for filing motion for final approval of settlement and applications for attorneys' fees. |

---

[110] Ennis Decl. ¶ 28.

31

| Date | Event |
|------|-------|
| Three weeks after the prior deadline. | Final Fairness Hearing |

If preliminary approval is granted, the proposed Class members will be notified of the terms of the Settlement and informed of their rights in connection therewith, including their right to appear and be heard at the hearing.[111]

## VII.    CONCLUSION

For the foregoing reasons, and in the interests of justice, Plaintiffs respectfully request that the Court enter an order granting the relief requested by this motion:

(i)      Granting expedited consideration of this motion and the holding of a final fairness hearing as soon as is practicable for the Court;

(ii)     Granting preliminary approval of the settlement agreement Plaintiffs have executed with Xcel Energy Inc., and e prime Energy Marketing, Inc.;

(iii)    Preliminarily certifying a Settlement Class;

(iv)    Appointing Breckenridge Brewery of Colorado, LLC and BBD Acquisition Co., LLC as Class Plaintiffs for the Settlement Class;

(v)     Appointing Polsinelli PC and The Barry Law Firm LLC as Settlement Counsel;

(vi)    Approving the manner and form of giving notice of the settlement to class members;

---

[111] The Settlement also confirms and acknowledges the Settling Defendants' obligations to provide notice to applicable state and federal regulatory entities under 28 U.S.C. § 1715(b). See, e.g., Ennis Decl. Ex. 1, ¶ 11.

(vii)    Establishing a timetable for publishing class notice and lodging objections to the terms of the settlement;

(viii)   Approving procedures for Class Members to exclude themselves from the Settlement Class and object to the Settlement;

(ix)     Appointing A.B. Data, Ltd. Administrators as the Settlement Administrator to conduct the duties assigned to that position in the Settlement;

(x)      Staying all non-Settlement proceedings in this action pending final approval of the Settlement; and

(xi)     Setting a date for a hearing regarding final approval of the settlement, at which the Court will consider (a) whether to grant final approval of the settlement; (b) class counsel's application for attorneys' fees and costs; and (c) any request for service awards to individual Class Plaintiffs; and

(xii)    For such other and further relief as the Court deems just and proper.


Dated:  January 22, 2021                   */s/ Russell S. Jones, Jr.*
                                           Russell S. Jones, Jr.
                                           Andrew J. Ennis
                                           POLSINELLI PC
                                           900 W. 48th Place, Suite 900
                                           Kansas City, MO 64112
                                           Telephone:   (816) 753-1000
                                           rjones@poslinelli.com
                                           aennis@polsinelli.com

                                           Stacy A. Carpenter
                                           POLSINELLI PC
                                           1401 Lawrence Street, Suite 2300
                                           Denver, CO 80202
                                           Telephone: (303) 583-8237
                                           scarpenter@polsinelli.com

75955527.4

Donald D. Barry
BARRY LAW OFFICES, LLC
5430 SW 17th Street
PO Box 4816
Topeka, KS 66604
Telephone: (785) 273-3151
dbarry@inlandnet.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2021, a true and correct copy of the foregoing was electronically filed and served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

*/s/ Russell S. Jones, Jr.*